UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JASON TRUCKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case no. 4:15CV700 PLC |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Jason Trucks ("Plaintiff") seeks review of the Social Security Administration's ("SSA") decision denying his applications for Disability Insurance Benefits and Social Security Income under the Social Security Act.[1] Because the Court finds that substantial evidence supports the decision to deny benefits, the Court affirms the denial of Plaintiff's applications.

### I. *Background and Procedural History*

In November 2011, Plaintiff filed applications for Disability Insurance Benefits and Social Security Income pursuant to Titles II and XVI of the Social Security Act. (Tr. 132-46). Plaintiff alleged he was disabled as of June 23, 2011[2] as a result of degenerative disc disease and "bipolar condition." (Tr. 180-84) The SSA denied Plaintiff's claims, and he filed a timely request for a hearing before an administrative law judge ("ALJ"). (Tr. 82-86, 90-94).

The SSA granted Plaintiff's request for review, and an ALJ conducted a hearing on July 22, 2013. (Tr. 95-99, 34-71). At the hearing, Plaintiff testified that he and his ex-wife shared

---

[1] The parties consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF No. 9).
[2] Plaintiff originally alleged that he was disabled as of December 31, 2009, but later amended the alleged date of onset. (Tr. 179, 178).

1

custody of their three children and he currently lived with his girlfriend of three years. (Tr. 37, 40). Plaintiff testified that he "used to be an alcoholic" but stopped drinking "[a]bout three years ago when me and my fiance got together." (Tr. 43). Upon further questioning by the ALJ, Plaintiff conceded, "I still occasionally drink. I do like one or two beers every like six months with a friend." (Tr. 43-44). Plaintiff believed he was disabled as a result of back pain, explaining, "There's days when I can't even get out of bed." (Tr. 44, 48). Plaintiff testified that he required assistance to bathe and dress, used an electric scooter when shopping, could stand no longer than fifteen to twenty minutes, did not do housework, and had difficulty with balance. (Tr. 48, 52-54). He attributed his muscular physique to genetics. (Tr. 44).

In regard to his bipolar disorder, Plaintiff testified that he had "lost several jobs because of manic episodes on the job." (Tr. 45). He described incidents in which he "flipped out," explaining that he "tend[ed] to say and do things that I don't mean or don't realize that I'm saying or doing while it's happening." (Tr.45-46). Plaintiff stated that the skills and techniques he learned through counseling "don't work." (Tr. 47). He was currently taking lithium for his mental health. (Tr. 51).

A vocational expert also testified at the hearing. (Tr. 57-70). The ALJ asked the vocational expert to consider a hypothetical individual of Plaintiff's age, education, and work experience, capable of light exertional work with the following limitations: never climb ropes, ladders, or scaffolds; occasionally climb ramps and stairs; occasionally stoop, crouch, and crawl. (Tr. 64-65). The ALJ added that the hypothetical individual was limited to "low stress, which is defined as only occasional decision making and occasional changes in the work setting; and only occasional interaction with the public, co-workers or supervisors." (Tr. 65). The vocational expert testified that such individual could not perform Plaintiff's past relevant work as a fast

food worker, formulator, or yard coupler. (Tr. 65). However, she stated the individual could perform other jobs in significant number in the national economy, including housekeeping, routing clerk, and merchandise marker. (Tr. 65-66).

In a decision dated November 20, 2013, the ALJ applied the five-step evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920 [3] and found that Plaintiff "has not been under a disability within the meaning of the Social Security Act from June 23, 2011 through the date of this decision[.]" (Tr. 12-26). The ALJ found that Plaintiff, who was twenty-four years of age on the alleged date of onset, had the severe impairments of "mild degenerative disc disease and a bipolar affective disorder." (Tr. 14).

After reviewing Plaintiff's testimony and medical records and finding that Plaintiff was "not overly credible," the ALJ determined that Plaintiff had the residual functional capacity (RFC) to "perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he should never climb ropes, ladders or scaffolds, but is able to occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl." (Tr. 17). The ALJ further limited Plaintiff to "low stress jobs, with 'low stress' defined as only occasional decision-making and occasional changes in the work setting" and "jobs with only occasional interaction with co-workers, supervisors and the public." (Id. at 17, 24). Finally, the ALJ held that, although Plaintiff was not able to return to any of his past work, "there are jobs that exist in significant numbers in the national economy that the claimant can perform[.]" (Tr. 24-25). Specifically, the ALJ found that Plaintiff could perform

---

[3] To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. See 20 C.F.R. §§ 404.1520. Those steps require a claimant to show that he or she: (1) is not engaged in substantial gainful activity; (2) has a severe impairment or combination of impairments which significantly limits his or her physical or mental ability to do basic work activities or (3) has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) is unable to return to his or her past relevant work; and (5) the impairments prevent him or her from doing any other work. Id.

3

the jobs of housekeeper/cleaner, routing clerk, merchandise marker, parking lot attendant, and document preparer. (Tr. 25).

Plaintiff filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review on March 25, 2015. (Tr. 6-8, 1-5). Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the SSA's final decision. Sims v. Apfel, 530 U.S. 103, 106-07 (2000).

## II.     *Standard of Review*

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruze v. Chater, 85 F.3d 1320, 1323 (8th Cir. 1996) (quoting Boerst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). In determining whether the evidence is substantial, a court considers evidence that both supports and detracts from the Commissioner's decision. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). However, a court "do[es] not reweigh the evidence presented to the ALJ and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reason and substantial evidence." Renstrue v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)).

"If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Partee v. Astrue, 638 F.3d 860, 863 (8th Cir. 2011) (quoting Goff v. Barnhart, 421 F.3d 785, 789 (8th Cir. 2005)). The Eighth Circuit has repeatedly held that a court should "defer heavily to the findings and conclusions" of the Social Security

Administration. Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010); Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001).

### III. Discussion

Plaintiff claims that substantial evidence does not support the ALJ's determination that he was not disabled. More specifically, Plaintiff asserts that the ALJ erred in: (1) finding Plaintiff's subjective allegations of disabling pain not credible; and (2) discounting the opinion of examining psychologist, Dr. Joseph Long, when formulating Plaintiff's mental RFC.[4] The Commissioner counters that the ALJ properly found Plaintiff's subjective allegations of pain not credible and created a mental RFC based upon substantial evidence of record.

*A. Credibility*

Plaintiff argues that there was "no substantial evidentiary basis" for the ALJ's determination that Plaintiff's subjective allegations of pain were not credible. (ECF No. 16 at 9). In response, the Commissioner asserts that the ALJ "articulated multiple valid reasons for finding [Plaintiff's] subjective complaints not credible." (ECF No. 19 at 4).

Before determining a claimant's RFC, the ALJ must evaluate the credibility of the claimant's subjective complaints. Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007) (citing Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001)). In assessing a claimant's credibility, an ALJ "must consider all of the evidence related to the subjective complaints, the claimant's daily activities, observations of third parties, and the reports of treating and examining physicians." McCoy v. Astrue, 648 F.3d 605, 614 (8th Cir. 2011) (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)).

---

[4] Although Plaintiff challenges the ALJ's credibility findings as they relate to his *physical* limitations, he attacks the *mental* RFC as lacking substantial evidentiary support.

"It is well-settled that an ALJ may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them." Goff, 421 F.3d at 792 (quoting O'Donnell v. Barnhart, 318 F.3d 811, 816 (8th Cir. 2003)). "However, '[t]he ALJ may disbelieve subjective complaints if there are inconsistencies in the evidence as a whole.'" Id. (quoting Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004)). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003) (citing Russell v. Sullivan, 950 F.2d 542, 545 (8th Cir. 1991)).

Here, the ALJ found that the objective medical evidence contradicted Plaintiff's complaints of disabling pain. (Tr. 21-24). The lack of objective medical basis to support a claimant's subjective descriptions is an important factor the ALJ should consider when evaluating those complaints. See Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995). For example, the ALJ noted that Plaintiff, then twenty six years of age, "reported a back injury since he was 13 years old, but he has never been found to have consistent muscle weakness or neurological deficit on any examination." (Tr. 19). A physical therapy evaluation of March 2010 noted that Plaintiff's gait was "relatively normal [on] level and [on] stairs." (Tr. 289). In April 2010, neurosurgeons at the Washington University School of Medicine found "no need for surgery and no objective basis for the claimant's reports of pain. . . ." (Tr. 20, 262). In October 2010, Dr. Paul Malak, a workers' compensation doctor, compared Plaintiff's recent MRI to an MRI of December 2009, and he found that Plaintiff's "disc herniation actually decreased after a year, likely due to the epidural steroid injection[.]" (Tr. 22, 350-53). An October 2010 x-ray of Plaintiff's lumbar spine revealed "no evidence of abnormality," and the ALJ determined that the clinical findings from a consultative examination of June 2011 were "most consistent with

symptom magnification." (Tr. 397, 21). A July 2013 CT of Plaintiff's lumbar spine showed only "mild internal disc derangement." (Tr. 21, 426-32, 693).

The ALJ further found that Plaintiff's work history, lack of treatment, and "known activities," were inconsistent with his subjective allegations of pain. (Tr. 18-23). "[A]cts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." Goff, 421 F.3d at 792 (quoting Johnson v. Apfel, 240 F.3d 1145, 1148-49 (8th Cir. 2001)). Here, Plaintiff's medical records revealed that, during the period of his alleged disability, he engaged in a fist fight at a bowling alley and played catch, softball, and basketball.[5] (Tr. 22, 452, 628, 669, 678). The ALJ observed that, despite Plaintiff's testimony that his back pain rendered him bedridden, he maintained a muscular build. (Tr. 18). Furthermore, the ALJ observed that Plaintiff "consistently sought and performed jobs that were physically demanding," and she reasoned: "It is very inconsistent to seek such physically demanding work if an individual has a debilitating spinal condition since youth." (Tr. 23).

Additionally, in her thorough review of Plaintiff's medical records, the ALJ identified "internally inconsistent statements to different medical providers" and statements that were inconsistent with his testimony at the hearing. (Id.). For example, Plaintiff testified that he stopped drinking alcohol about three years earlier, but he informed Dr. Long, the consultative examiner, that he still drank and had recently gotten a tattoo while hungover.[6] (Tr. 17-18). Further detracting from his own credibility, Plaintiff denied having made those statements to Dr.

---

[5] While Plaintiff's ability to perform these activities does not disprove disability as a matter of law, "[i]nconsistencies between subjective complaints of pain and daily living patterns may … diminish credibility." Casey v. Astrue, 503 F.3d 687, 696 (8th Cir. 2007) (quoting Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996)) (holding that medical records' frequent references to claimant's active lifestyle undermined subjective complaints).

[6] The Court also notes that an emergency room record from March 2, 2012, reflects that Plaintiff was experiencing abdominal pain after consuming "approx. 10 shots and several beers" the previous day. (Tr. 608).

Long, protesting, "I told him that I haven't really drank. I occasionally drink. . . . that's what I told him when I was there" and the tattoo "was a freebie" from a friend. (Tr. 44). The ALJ also noted that Plaintiff informed Dr. Long that he needed immediate back surgery, a statement unsupported by the medical records. (Tr. 20, 262).

Finally, the ALJ found Plaintiff's complaints of pain were not credible because Plaintiff, "whose work history is less than stellar, is financially motivated to obtain benefits from some source." (Tr. 19). "[A] claimant's financial motivation may contribute to an adverse credibility determination when other factors cast doubt upon the claimant's credibility." Ramirez v. Barnhart, 292 F.3d 576, 582 n.4 (8th Cir. 2002). The ALJ noted that Plaintiff had "multiple Workers Compensation claims dating as far back as 2004." (Tr. 19). The record reveals that Plaintiff filed Workers' Compensation claims against: Ace Property & Casualty in June 2004; Express Personnel Services on his first day of work in November 2005; Aerofil Technology in July 2007; and Manpower International in February 2010. (Tr. 19, 355-90). The ALJ explained: "A claimant who files so many complaints alleging on-the-job injuries is more likely motivated by secondary gain, especially when that individual reports he was significantly limited since age 13 by back problems, they would logically not even attempt physically demanding work." (Tr. 19).

The ALJ thoroughly explained her findings and the inconsistencies in the record upon which she based the credibility determination. Because the ALJ pointed to substantial evidence in the record supporting her decision to discount Plaintiff's subjective allegations, the Court defers to the ALJ's credibility finding. See e.g., Casey v. Astrue, 503 F.3d 687, 696 (8th Cir. 2007).

*2. Mental RFC*

Plaintiff claims that the ALJ failed to provide a "legally sufficient rationale" for discounting Dr. Long's psychological evaluation and the record contained no medical evidence to support the ALJ's mental RFC determination.[7] (ECF No. 16 at 12-13). In particular, Plaintiff challenges the ALJ's determination that Plaintiff was capable of performing a low stress job with occasional interaction with co-workers, supervisors, and the public. The Commissioner counters that the ALJ properly assessed the consulting psychologist's medical opinion and formulated a mental RFC based upon substantial evidence of record. (ECF No. 19 at 11-14).

In determining a claimant's RFC, the ALJ is required to consider the medical opinion evidence of record together with the other relevant evidence. 20 C.F.R. §§ 404.1527(b), 416.927(b). When determining the appropriate amount of weight to give a medical opinion from a non-treating source, the ALJ considers the following factors: examining relationship, treatment relationship, supportability, consistency, and specialization. Wiese v. Astrue, 552 F.3d 728, 731 (8th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)). "The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." Wagner, 499 F.3d at 848 (quoting Pearsall, 274 F.3d at 1219).

In regard to his mental impairment, Plaintiff testified that he had seen Dr. Nadim Nasrallah[8] twice for his bipolar disorder, but could not afford to continue treatment. (Tr. 45). Plaintiff stated that his bipolar disorder affected his ability to work in that he had "lost several jobs because of manic episodes on the job." (Id.). Plaintiff explained: "I tend to say and do things that I don't mean or don't realize that I'm saying or doing while it's happening. I have

---

[7] The Court notes that Plaintiff does not challenge the ALJ's RFC assessment with regard to his physical limitations, but rather attacks the limitations the ALJ included to accommodate Plaintiff's mental impairments.

[8] Although the record attributes these medical records to Dr. Nasrallah, plaintiff's counsel stated at the hearing that Plaintiff had, in fact, seen Dr. Massanari. As the ALJ referred to this doctor as Dr. Nasrallah, so will this Court.

had violent tendencies but I don't – I try to remove myself from the situation before I get to the violent point of getting myself arrested." (Tr. 46). He stated that these incidents are "at least once, twice a month to where I will flip out." (Tr. 47).

When questioned about his personal life, Plaintiff testified that his ex-wife did not raise concerns about Plaintiff's volatile behavior during the divorce and they shared custody of their three children. (Id.). At the time of the hearing, Plaintiff resided with his girlfriend of three years. (Tr. 43). In his adult function report, Plaintiff stated that he communicated with friends on Facebook and "sees them when they come over to my home." (Tr. 211).

On December 15, 2009, Plaintiff informed his primary care provider, nurse practitioner Tammy Watz that he was experiencing mood swings, and she prescribed Celexa. (Tr. 299). Nurse Watz's notes from a July 2010 appointment did not reference Plaintiff's depression or bipolar disorder, but stated that Plaintiff exhibited "normal insight." (Tr. 301-03). In October 2010, after he and his ex-wife separated, Plaintiff sought treatment for depression at Patients First Health Care,[9] but he reported "it is not difficult at all to meet home, work, or social obligations." (Tr. 305-06). The doctor increased Plaintiff's dosage of Celexa. (Id.).

On June 23, 2011, Dr. Long completed a psychological evaluation at the request of the SSA. (Tr. 433-36). Dr. Long conducted no formal psychological testing, but rather based his psychological evaluation upon a review of the Plaintiff's medical records and a single interview with Plaintiff. (Tr. 433). In the evaluation, Dr. Long noted that Plaintiff was muscular, "alert and oriented," "animated and energetic," and walked with a normal gait. (Id.). Although Plaintiff was fidgety and clenched his jaw repeatedly "to keep [his] mind from wandering off to bad places," his thinking "was not grossly illogical or incoherent." (Tr. 434). Dr. Long assessed

---

[9] As the final pages of Plaintiff's Patients First Health Care records of October 21, 2010 and October 28, 2010 are absent from the record, it is not clear who treated him. (Tr. 305-08).

Plaintiff's intellect "to be in the average to perhaps above average range." (Id.). At that time, Plaintiff was not taking medication for his mental health. (Id.).

In his interview with Dr. Long, Plaintiff "boasted that he was a very hard and productive worker who figured out better ways of doing jobs more efficiently" but he "has been fired from a number of jobs because he gets irritable and mouthy." (Tr. 435). Plaintiff informed Dr. Long that "he has been diagnosed with Degenerative Disc Disease and told that he needs to have surgery immediately." (Id.). Dr. Long diagnosed Plaintiff as follows: "Axis I – bipolar disorder, severe; co-morbid ADHD; history of polysubstance abuse with ongoing alcohol abuse; Axis II – personality disorder with anti-social and narcissistic features." (Id.). As to Plaintiff's functional limitations, Dr. Long opined that Plaintiff's "ability to understand and remember instructions is no more than mildly impaired," his ability "to sustain concentration and persist with tasks is at least moderately impaired," and his social and adaptive functioning "is markedly impaired." (Id.).

On January 5, 2012, Dr. Richard Moreno completed a psychiatric review technique based on Plaintiff's medical records.[10] (Tr. 560-70). Dr. Moreno concluded that Plaintiff suffered bipolar disorder and depression. (Tr. 563). Unlike Dr. Long, Dr. Moreno found that Plaintiff's mental impairments did not limit his activities of daily living, social functioning, or ability to maintain concentration, persistence, or pace. (Tr. 568).

Plaintiff's medical records contain no evidence of mental health issues or mental health treatment between October 2010 and January 2013. Although Plaintiff's records reveal numerous visits to the emergency room between 2009 and 2013, all of these visits related to physical pain. Emergency room records from January 2012 and October 2012 stated that

---

[10] Dr. Moreno did not consider Dr. Long's report when completing the psychiatric review technique. (Tr. 570).

Plaintiff exhibited "a normal mood and affect. His behavior is normal. Judgment and thought content are normal." (Tr. 575, 632). An emergency room record from May 2013 stated that Plaintiff was "awake, alert and cooperative with an affect that is calm and appropriate." (Tr. 649).

On January 7, 2013, Dr. Nasrallah diagnosed Plaintiff with depression and bipolar disorder and prescribed lithium. (Tr. 689). When Plaintiff returned to Dr. Nasrallah for pharmacological management on February 1, 2013, Dr. Nasrallah reduced Plaintiff's dosage of lithium. (Tr. 687). Plaintiff received no further mental health treatment before the hearing in July 2013. (Tr. 45).

In assessing the effects of Plaintiff's mental impairments on his RFC, the ALJ found that Plaintiff's failure to seek treatment for his mental impairments undermined his claims that they were debilitating. (Tr. 20). A claimant's failure to seek treatment from a mental health professional is a relevant consideration when evaluating a claimant's mental impairment. See Partee v. Astrue, 638 F.3d 860, 864 (8th Cir. 2011). The ALJ explained: "[Plaintiff] has not sought treatment from any of the many sources who provide free or low-cost mental health care[,] which adversely impacts his claim he was unable to obtain medical treatment, casting doubt about the true nature and extent of any of the claimant's alleged mental impairments." (Id.). The ALJ found that Plaintiff's efforts in regard to seeking mental health treatment "have been primarily aimed at obtaining Workers Compensation benefits or payments for disability rather than finding some of the many agencies that assist those with mental illness or even general medical conditions and who have no health insurance or are not employed[.]" (Id.).

The ALJ considered Dr. Long's psychological evaluation and, to the extent it found Plaintiff moderately and markedly impaired, assigned it little weight. (Tr. 23). The ALJ

12

explained that Plaintiff's "mental impairment is relieved by medication and could be found to be non-severe." (Id.). While the ALJ determined that Dr. Long's diagnosis of "personality disorder" was consistent with the record, he gave Dr. Long's opinion "limited weight because, as noted above, [Dr. Long] based his opinion extensively on the claimant's subjective reports and the claimant is not overly credible." (Id.). Furthermore, evidence in the record contradicted Dr. Long's opinion regarding the severity of Plaintiff's social functioning limitations. See Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007) (ALJ may give less weight to a medical opinion when it is inconsistent with the evidence in the record). The Court finds that the ALJ provided sufficient reasons for discrediting Dr. Long's opinion.

Plaintiff claims that, after the ALJ assigned little weight to Dr. Long's medical opinion, she "fail[ed] to point to medical opinion evidence to support [her] conclusions regarding plaintiff's ability to engage in sustained work[-]related activity." (ECF No. 16 at 13). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016) (quoting Cox v Astrue, 495 F.3d 614, 619 (8th Cir. 2007)). "However, there is no requirement that an RFC finding be supported by a specific medical opinion." Id. Nor is an ALJ limited to considering medical evidence exclusively when evaluating a claimant's RFC. Cox, 495 F.3d at 619.

As an initial matter, the Court notes that the ALJ did not entirely discount Dr. Long's opinion. Rather, the ALJ assigned Dr. Long's opinion "limited weight" to the extent it was consistent with the ALJ's assessment of Plaintiff's mental functioning. (Tr. 23). For example, the ALJ stated that "the personality diagnosis with narcissistic features reported by Dr. Long is consistent with the mental functional limitations in this decision." (Id.). The ALJ further found:

"That personality disorder is also consistent with the claimant's clearly exaggerated reports of the symptoms and functional restrictions when compared to activities in which he was engaging during periods of his most severe back pain, and thus are [sic] consistent with some of the social limitations reported by Dr. Long." (Id.). Accordingly, Dr. Long's medical opinion satisfied the requirement that "some medical evidence of the claimant's ability to function in the workplace" support the ALJ's RFC findings. See, e.g., Cox, 495 F.3d at 620.

Furthermore, the medical opinion of the consulting psychologist, Dr. Moreno, supported the ALJ's determination that Plaintiff's mental functioning was not so limited as to preclude work. (Tr. 560-70). Dr. Moreno completed a psychiatric review technique based on Plaintiff's medical records and concluded that the "evidence does not indicate any limits due to psych." (Tr. 570). More specifically, Dr. Moreno found that Plaintiff was not limited in his activities of daily living, social functioning, or concentration, persistence, or pace. (Tr. 568).

Plaintiff likens his case to Lauer v. Apfel, 245 F.3d 700 (8th Cir. 2001) and Singh v. Apfel, 222 F.3d 448 (8th Cir. 2000). In Lauer, the United States Court of Appeals for the Eighth Circuit reversed the denial of benefits because the record contained no medical evidence to support the ALJ's assessment of the degree to which the plaintiff's mental impairments affected his RFC. Lauer, 245 F.3d at 706. In Singh, the Eighth Circuit reversed the denial of benefits because the ALJ improperly disregarded the opinion of the plaintiff's treating physician and failed to credit the plaintiff's subjective complaints of pain, "all of which were consistent with the objective medical evidence." Singh, 222 F.3d at 452. The instant case is distinguishable because the record here is replete with inconsistencies and, while the record contained a significant amount of objective tests and clinical findings, it did not provide substantial support for Plaintiff's allegations of disability.

Finally, Plaintiff argues that the vocational expert's testimony did not constitute substantial evidence of Plaintiff's ability to perform work in the national economy because it was based upon a flawed hypothetical question.  (ECF No. 16 at 16).  See Robson v. Astrue, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a vocational expert's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations).  Plaintiff bases this argument upon his claim that the ALJ's RFC assessment was not supported by substantial evidence.  For the reasons set forth above, the ALJ did not err in determining Plaintiff's RFC.  Plaintiff's corresponding challenge to the hypothetical question similarly fails, and the Court concludes that the ALJ's decision finding that Plaintiff was not disabled is supported by substantial evidence.

### III.    Conclusion

For the reasons discussed above, the Court finds that substantial evidence in the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.  Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying Social Security benefits to Plaintiff is **AFFIRMED.**

A separate judgment in accordance with this Memorandum and Order is entered this date.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of December, 2016